MEMORANDUM OPINION



No. 04-06-00017-CV



Elizabeth Jennings CHAPMAN,


Appellant



v.



Calvin C. CHAPMAN, IV,


Appellee



From the 216th Judicial District Court, Kendall County, Texas


Trial Court No. 03-414


Honorable Michael Peden, Judge Presiding (1)



Opinion by: Alma L. López, Chief Justice


Sitting: Alma L. López, Chief Justice

 Catherine Stone, Justice

 Phylis J. Speedlin, Justice


Delivered and Filed: June 20, 2007


AFFIRMED


 Elizabeth Jennings Chapman ("Elizabeth") appeals from a divorce decree appointing Calvin
C. Chapman, IV ("Calvin"), sole managing conservator of their two daughters. On appeal, Elizabeth
contends that the trial court erred in: (1) allowing the court-appointed expert witness to testify when
the expert had not yet completed her report; (2) denying Elizabeth's supplemental motion for
continuance; and (3) denying Elizabeth's request for a jury instruction prohibiting the appointment
of a person as joint managing conservator when the person had a history of committing physical or
sexual abuse against a family member. We affirm.Expert Testimony and Motion for Continuance 

 In her first issue, Elizabeth contends that the trial court erred in allowing Dr. Dina Trevino,
the court-appointed psychologist, to testify because Trevino had not completed a social study or
report at the time of her testimony. In her second issue, Elizabeth contends that the trial court erred
in denying her supplemental motion for continuance because denying the motion allowed Trevino
to testify without completing a report. Thus, in both issues, Elizabeth asserts the same argument:
that the trial court erred because Trevino should not have been allowed to testify without first
completing a social study and report. Because both issues involve the trial court's admission of
expert testimony, we address the issues together and review the court's decisions under an abuse of
discretion standard. In re J.P.B., 180 S.W.3d 570, 575 (Tex. 2005) (admission or exclusion of
evidence reviewed for abuse of discretion). A trial court abuses its discretion when its ruling is
arbitrary, unreasonable, or without reference to any guiding rules or legal principles. K-Mart Corp.
v. Honeycutt, 24 S.W.3d 357, 360 (Tex. 2000). We will not reverse a trial court for an erroneous
evidentiary ruling unless the error probably caused the rendition of an improper judgment. See Tex.
R. App. P. 44.1; Owens-Corning Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998). In
determining whether the admitted or excluded testimony probably resulted in the rendition of an
improper judgment, we must review the entire record. See Tex. Dep't of Transp. v. Able, 35 S.W.3d
608, 617 (Tex. 2000); Gee v. Liberty Mut. Fire Ins. Co., 765 S.W.2d 394, 396 (Tex. 1989). 
Typically, error on questions of evidence is not reversible unless the complaining party can
demonstrate that the judgment turns on the particular evidence excluded or admitted. Able, 35
S.W.3d at 617; Doncaster v. Hernaiz, 161 S.W.3d 594, 601 (Tex. App.-San Antonio 2005, no pet.). 

 The trial court appointed Psychologist Dina Trevino as an investigator on July 18, 2005, and
ordered her to conduct psychological evaluations of the Chapmans and their daughters as well as a
social study of the daughters and each of the Chapmans' homes. The court ordered Trevino to file
a written report of her findings by October 15, 2005. Although the court's order provided Trevino
with a deadline of October 15, 2005, the case went to trial on September 6, 2005, and Trevino was
unable to complete all of the assigned tasks by that date. 

 Before Trevino testified, Elizabeth filed a motion to strike Trevino's testimony on the ground
that Trevino had not completed all of the court-ordered tasks. At a hearing on the motion, Trevino
testified that she completed the interviews and psychological testing of both of the Chapmans and
that she also met with the children and evaluated them with their father. In addition, she had spoken
with some of the individuals whose names were provided to her by each of the Chapmans. She
testified that she had not completed the following tasks: home studies of the children at each of the
Chapmans' homes; an evaluation of the children with their mother; some of the interviews of people
whose names were provided to her by the Chapmans; and a report of her findings. Trevino indicated
to the trial court that she could not provide a final conclusion but that she was prepared to testify
about her interviews with the Chapmans and the results of each of the Chapmans' psychological
testing. At the conclusion of the hearing, the court denied Elizabeth's motion and allowed Trevino's
testimony.

 Assuming, without deciding, that the trial court erred in admitting Trevino's testimony, the
error was harmless because the judgment did not turn on her testimony. See Able, 35 S.W.3d at 617;
Doncaster, 161 S.W.3d at 601. Even without Trevino's testimony, the record contains considerable
evidence to support the jury's verdict. The record includes testimony that Elizabeth kept the children
isolated from Calvin and his family in the two years following the Chapmans' separation and that
the children's attitude toward Calvin changed drastically for the worse during that time period. 
Calvin, his parents, and two family friends testified that Calvin and the children had a happy, loving
relationship before the Chapmans' separation. Following the Chapmans' separation, evidence
showed that the children displayed anger and hatred toward Calvin, including calling him derogatory
names, stating that they never wanted to see him again, accusing him of abusing them, and refusing
to speak or make eye contact with him during visits. Calvin testified that he believed Elizabeth
mentally poisoned the children against him. Similarly, a long-time friend of Elizabeth's, Diane
Flynn, testified that she felt that the children had been "poisoned mentally by their mother." 

 Ruth Goss, a family friend whose grandchildren played with the Chapmans' children once
or twice a week for two years, also testified about the change in the children's behavior after their
parents' separation. Goss testified that before the separation, the children would give her a hug and
appear happy to see her, but that when she saw the Chapmans' younger daughter, A.C., at the
children's school after the separation, A.C. would not make eye contact with her. Goss also testified
that when she saw Elizabeth and the children at a grocery store after the Chapmans' separation,
Elizabeth was cold to her, and the children would not speak to her. When she asked Elizabeth if the
children could return to her house to play with her grandchildren, Elizabeth declined. In addition,
Arthur Murphey, a counselor who supervised five visits between the children and Calvin, testified
that when he and Calvin took the Chapmans' older child, K.C., to a bowling alley during a visit, K.C.
told Murphey that she would bowl if he promised not to put in his report that she had fun. In
addition, Murphey testified that K.C. was originally excited to bowl, but that after she called
Elizabeth from the restroom, she decided she no longer wanted to bowl. 

 The record also includes evidence that Elizabeth had health problems, was unemployed, and
did not have definite plans for employment in the future. Elizabeth testified that she had sciatica in
her back and a nerve disease in her foot. She testified that she worked as a secretary in the past but
that she was currently unemployed because it was difficult for her to walk or sit for extended periods
of time. At the time of trial, Elizabeth and the children were living with her mother. When asked
how she intended to support the children, she stated that she hoped to be able to go back to college
to become a teacher. 

 When Calvin was asked about his plans for himself and the children if he became managing
conservator, he testified that he wanted the court to appoint the Rachel Foundation, an intensive,
live-in, therapy program, to help him reunite with his children. He stated that the program
specialized in situations in which one parent mentally poisoned children against the other parent. 
If the court did not appoint the Rachel Foundation, Calvin testified that he, the children, and a
therapist could live with his mother and father while he and the children reunited. He testified that
once he and the children were reconciled, all of them would remain in counseling but would return
to a regular routine of work and school. Calvin owned his own engineering firm, and he testified
that he would be able to take the necessary time off from work for intensive counseling because he
had a strong group of staff members who could maintain the business while he was gone. After examining the record, we conclude that there is ample evidence aside from Trevino's
testimony to support the jury's decision to appoint Calvin sole managing conservator. We also note
that Trevino's testimony was limited to the tasks she completed. The limited nature of her testimony
was made clear to the jury when she specifically testified that she was not making a custody
recommendation and when she was cross-examined at great length about the incompleteness of her
work. Considering the other evidence that could support the jury's verdict and the limited nature of
Trevino's testimony, we conclude that Elizabeth has not demonstrated that the verdict turned on
Trevino's testimony or that the testimony caused the rendition of an improper judgment. See Able,
35 S.W.3d at 617; Doncaster, 161 S.W.3d at 601; Bott v. Bott, 962 S.W.2d 626, 629 (Tex.
App.-Houston [14th Dist.] 1997), no pet.. Therefore, any error in the admission of Trevino's
testimony was harmless.

 Because we hold in the first issue that any error in the trial court's admission of Trevino's
testimony was harmless, and because Elizabeth's sole argument in the second issue is that the court's
denial of her motion for continuance was error because it allowed Trevino's testimony, we hold that
any error in the court's denial of Elizabeth's motion for continuance was also harmless. State v.
Wood Oil Distrib. Inc., 751 S.W.2d 863, 865 (Tex. 1988) (denial of motion for continuance reviewed
for abuse of discretion). In addition, we note that this case was pending for almost two years before
it went to trial and that Calvin had not seen his children for nearly sixteen months of that time and
had only recently started seeing them in supervised visitations. We overrule Elizabeth's first and
second issues. Jury Charge

 In her third issue, Elizabeth contends that the trial court erred in denying her request for a jury
instruction modeled after Texas Pattern Jury Charge 215.3, which states that a person may not be
appointed a joint managing conservator if that person has a history or pattern of past or present child
neglect or of physical or sexual abuse directed against a parent, spouse, or child. See Comm. on
Pattern Jury Charges, State Bar of Tex., Texas Pattern Jury Charges: Family PJC 215.3 (2006). We
review a trial court's decision to submit or refuse a particular instruction under an abuse of discretion
standard. Shupe v. Lingafelter, 192 S.W.3d 577, 579 (Tex. 2006). The omission of an instruction
is reversible error only if the omission probably caused the rendition of an improper judgment. Id.

 Assuming, without deciding, that the trial court erred in denying Elizabeth's request, the error
was harmless because the omission of the instruction did not cause the rendition of an improper
judgment. First, the jury heard all of the allegations of physical and sexual abuse lodged against
Calvin. Kathleen Gleason, Elizabeth's therapist, testified that she believed Calvin sexually abused
his children and abused Elizabeth. Carol Robinson, a victim services coordinator, testified that she
took victim-impact statements from the children in which the children alleged sexual and physical
abuse by Calvin. The statements were admitted into evidence. Elizabeth's mother testified that she
witnessed Calvin physically abusing one of the children at a restaurant. Joni Chavez-Martell, who
counseled Elizabeth and the children, testified about the children's statements to her regarding
physical and sexual abuse by Calvin. Elizabeth's attorney also addressed the allegations of abuse
in her closing arguments. Thus, the jury was well aware of the allegations of abuse. Second, the
requested instruction, which addressed only the appointment of joint managing conservators, was
not relevant to the jury's ultimate decision to appoint Calvin sole managing conservator. 
Considering that the jury heard evidence of all of the allegations of abuse against Calvin and that the
requested instruction prohibited only a form of conservatorship that the jury did not ultimately
choose, we conclude that the omission of the instruction did not cause the rendition of an improper
judgment. See Shupe, 192 S.W.3d at 579. We overrule Elizabeth's third issue. 


Conclusion

 We affirm the trial court's judgment.


 Alma L. López, Chief Justice



1. Sitting by assignment. See Tex. Gov't Code Ann. § 74.056 (Vernon 2005).